FILED
JEANNE A. NAUGHTON, CLERK
AUG 15 2018
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

CHIRAG K. PATEL and
APEKSHA PATEL,

      Debtors.

Case No. 17-17048 (JNP)

Chapter 11

------------------------------------------------X

DASHARATH PATEL,

      Plaintiff,

v.

CHIRAG K. PATEL and
APEKSHA PATEL,

      Defendants.

Adv. No. 17-01692

------------------------------------------------X

## OPINION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Before the Court is a Motion to Dismiss (the "Motion") count two of the Amended Complaint, which is the count related to Apeksha C. Patel (the "Defendant"). Dkt. No. 13. The Amended Complaint filed by Dasharath Patel (the "Plaintiff") alleges that the Defendant's husband, Chirag Patel ("Chirag"), committed fraud against the Plaintiff and that Chirag's fraud should be imputed to the Defendant, such that her alleged debt to the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Dkt. No. 11. The Plaintiff argues that Chirag's fraud should be imputed to the Defendant due to the Defendant's "partnership" or knowledge of, and benefit from, Chirag's scheme to defraud the Plaintiff. Amended Complaint ¶¶ 34-37. The Defendant argues that the Plaintiff failed to sufficiently allege that the Defendant and Chirag were involved in a partnership or that she aided and abetted the fraud, and therefore

the Amended Complaint fails to state a claim upon which relief can be granted. For the reasons discussed below, the Court grants the Motion without prejudice.

## BACKGROUND

The Complaint alleges the following facts. On January 15, 2012, the Plaintiff and Chirag entered into a business relationship to own and operate a number of Sears franchises. As part of this arrangement, they entered into two operating agreements (the "Operating Agreements") to form two New Jersey limited liability companies, Prayosha PA Holdings LLC and Prayosha NJ Holdings LLC (the "Holding Companies"). Chirag is the managing member of both Holding Companies and he owns a 55% interest in each Holding Company while the Plaintiff owns the remaining 45%.

The Plaintiff entrusted funds (the "Funds") to Chirag to deposit into the Holding Companies' bank accounts, with the understanding that the Funds would be used to operate of the businesses. The Amended Complaint alleges that, without the Plaintiff's knowledge, $1,025,000 of the Funds was transferred to Chirag's and the Defendant's joint personal account. Amended Complaint ¶ 17. The Amended Complaint additionally alleges that $350,000 of the Funds was used by Chirag and the Defendant to pay personal credit card and loan obligations. Amended Complaint ¶ 17. Due to the transfer and use of the Funds, the Holding Companies were left with insufficient capital to fund business operations, leading to a default on obligations to Sears which were guaranteed by Chirag and the Plaintiff. Sears thus obtained a judgment for $853,372.38 against the Holding Companies, Chirag, and the Plaintiff.

Chirag and the Defendant jointly own their home, two vehicles, bank accounts, and other personal property. She has access to their joint account and the ability to write checks from it. The Defendant wrote checks from at least two of the businesses' accounts, including Prayosha PA; and account statements for both Holding Companies are mailed to the Defendant's and

Chirag's home. The Defendant is also on the payroll of a few of the businesses run by Chirag. The couple also jointly claims the gains and losses of the Holding Companies on their taxes.

The Defendant and Chirag filed a joint Chapter 11 petition on April 4, 2017. On October 10, 2017, the Plaintiff filed the initial complaint objecting to the dischargeability of his claims against the Defendant and Chirag. In December 2017, the Plaintiff filed the Amended Complaint to address additional claims against the Defendant. The Defendant filed the Motion on December 8, 2017. Chirag and the Defendant filed a joint Answer to the Amended Complaint on January 9, 2018. Chirag denied all allegations against him and the Defendant gave no response to the allegations against her because this Motion is pending.

The Plaintiff argues that, but for the alleged misappropriation of the Funds from the Holding Companies' accounts to the Defendant's and Chirag's joint personal account (the "Misappropriation"), the Holding Companies would not have defaulted on their obligations to Sears, the Sears judgment would not have been entered, and the Plaintiff would not have lost the funds he entrusted to Chirag. The Amended Complaint alleges that the Defendant knew or should have known of Chirag's scheme to defraud the Plaintiff, that she was involved in the fraud, and that she benefitted from the fraud. Amended Complaint ¶¶ 37, 40, 43. The crux of the Plaintiff's argument is that Chirag's fraud should be imputed to the Defendant because of her knowledge of Chirag's scheme or her involvement as a "partner," making her debts to him nondischargeable.

The Defendant seeks to dismiss the Amended Complaint as related to her arguing: (1) that the Plaintiff failed to sufficiently allege a partnership relationship between herself and Chirag; and (2) that the Amended Complaint merely alleges her knowledge of the Misappropriations or misrepresentations after they were committed, but not that she was aware of them during their commission, thus, the alleged fraud cannot be imputed to her.

3

## JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H), & (I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## DISCUSSION

### I. Standard for a Motion to Dismiss

The Third Circuit has provided a two-part analysis in reviewing a complaint under Rule 12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The first step requires that the factual and legal elements of a claim be separated. Id. At this stage, the Court must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions. Id. at 210-211. The second portion of the analysis calls for the court to then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible" claim for relief. Id. at 211.

For a complaint to satisfy this standard, the facts presented must cross the line from where the claim is "conceivable" to where the facts produce a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." Fowler 578 F.3d at 211. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009). Finally, a plaintiff is not required to establish the elements of a prima facie case, they only need to put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler 578 F.3d at 213. However,

allegations that only raise a "sheer possibility that a defendant has acted unlawfully" are not sufficient. Iqbal, 556 U.S. at 678.

To survive the Motion, the Plaintiff must show that it is plausible that either a partnership relationship existed between the Defendant and Chirag, or that the Defendant both knew and aided her husband in defrauding the Plaintiff.

## II. Standard for Imputing a Claim Under § 523(a)(2)(A) to a Spouse

The Plaintiff alleges the Defendant had a partnership relationship with Chirag and that she knew or should have known of her husband's fraud, thus imputing liability to her. The Plaintiff claims that the debts of the Defendant are nondischargeable due to actual fraud under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (emphasis added). The Plaintiff must establish that: (1) the Defendant made representations knowing they were false; (2) the Defendant made the representations with the intent and purpose of deceiving the Plaintiff; (3) the Plaintiff justifiably relied on the Defendant's false representations; and (4) the Plaintiff suffered a loss or damage as a proximate consequence of the representations having been made. See In re Feldman, 506 B.R. 222, 228 (Bankr. E.D. Pa. 2014) (citing In re Vepuri, 2009 WL 2921305, at *10 (Bankr. E.D. Pa. 2009)); In re Kennedy, 566 B.R. 690, 726 (D.N.J. 2017); See also 4 Collier on Bankruptcy ¶523.08[1][e], at 523-47 (16th ed. 2015).

"As a general rule, fraudulent practices of one spouse are not automatically imputed to the other spouse for purpose of nondischargeability under 11 U.S.C. § 523(a)(2)(A)." In re Antonious, 358 B.R. 172, 184 (Bankr. E.D. Pa. 2006) (citing In re Carp, 340 F.3d 15, 26 (1st Cir. 2003); In re Tsurukawa, 258 B.R. 192, 198 (B.A.P. 9th Cir. 2000)). A marital union alone without establishing a partnership or agency relationship between spouses cannot serve as a basis

for imputing fraud from one spouse to the other. Antonious, 358 B.R. at 184 (citing Tsurukawa, 258 B.R. at 198). A partnership must instead be implied "while completely ignoring the parties' social relationship." Id. at 185 (quoting In re Copeland, 291 B.R. 740, 769 (Bankr. E.D. Tenn. 2003)). Fraud can be imputed to a spouse if the spouses were acting in an agency or partnership relationship. Id. at 184. Based on agency principles, fraud can be imputed when there is "evidence that the 'innocent' spouse was involved in a business relationship with the 'wrongdoing' spouse that gave rise to the debt." Id. at 185 (quoting In re Baines, 337 B.R. 392, 407 (Bankr. D.N.M. 2006)). Additionally, a spouse may be liable for the fraud or misrepresentations of the other spouse under § 523(a)(2)(A) if the spouse knowingly aided and abetted in that fraud. Id.

> When determining whether a partnership exists, courts generally consider the totality of the circumstances and generally find partnerships "where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money."

Id. (quoting Copeland, 291 B.R. at 770).

The Plaintiff alleges that the debts owed by the Defendant are nondischargeable because of her allegedly treating various business interests with her husband as a partnership and that she personally benefited from such fraudulent acts. See Amended Complaint ¶ 35. Despite the Defendant's resulting benefits from the Plaintiff's funds being placed into a personal account to which she had access, there must be plausible allegations of a partnership relationship to impute fraud to her. Antonious, 358 B.R. at 184.

## ANALYSIS

The Plaintiff has not alleged sufficient facts to make it plausible that this Court could find that the Defendant entered into a business relationship with Chirag, or that she had knowledge of, or aided in, Chirag's fraud. The Defendant argues that the Plaintiff failed to establish that the

Defendant was in an agency or partnership relationship with her husband, and thus cannot impute liability to her. The Defendant argues that the alleged facts attempt to equate the Defendant's marriage to assert a partnership relationship with Chirag. Therefore, the Defendant argues, the Amended Complaint fails to state a claim upon which relief can be granted with respect to her. The court agrees.

Although the Defendant and Chirag own most of their assets jointly, the Defendant does not have an interest in the Holding Companies. Amended Complaint ¶¶ 5, 8, 10. The Defendant is also on the payroll of a few, but not all, of her husband's businesses. Id. at ¶ 8. This suggests that the Defendant is solely an employee of those companies, the Amended Complaint does not allege that the Defendant is involved in making business decisions.

The Plaintiff also alleges that the Defendant's involvement as a "partner" in the business is evidenced by her issuance of at least two checks from business accounts. Id. ¶ 34. These factors are minimal in comparison to what has led prior courts to find a partnership relationship among spouses to impute fraud. See Kennedy, 566 B.R. at 724-728; In re Paolino, 75 B.R. 641, 645 (E.D. Pa. 1987). For example, no facts were alleged to suggest that the checks were for non-business purposes or for personal expenses.

The court in Paolino imputed fraud to the wife because she had jointly purchased property with her husband with the intention of making a profit. 75 B.R. at 645. The court imputed the husband's fraud to the spouse, despite the wife having no communication with the plaintiffs, because there was clear evidence of a business partnership. The court found a partnership because the couple had jointly purchased more than ten investment properties with the intention of negotiating leases, collecting rent, paying taxes, and making repairs. Id. The existence of a partnership in Paolino hinged on the couple having jointly engaged in business decisions to make a profit. Here, the Plaintiff did not allege that Defendant is an owner of her

7

husband's companies or that she participated in making business decisions with her husband comparable to Paolino.

Similarly, the court in Kennedy imputed liability to the wife under partnership principles despite her claim that she had no knowledge of her husband's fraudulent business dealings. 566 B.R. at 724. Mrs. Kennedy helped to create, build, and expand the couple's business. The couple considered themselves partners in a property flipping business, the wife used the company account to write many checks over four years, and she headed the negotiations of at least one of the transactions at issue. Id. at 725. Here, there are no allegations that the Defendant was directly involved in any managerial business acts, negotiations, or decisions; or that she was involved in the drafting of the Operating Agreements or an equity holder in either of the Holdings Companies. The Plaintiff has only alleged that the Defendant was on the payroll of a few of her husband's businesses as an employee, and is alleged to have written checks from business accounts, including Prayosha PA. The Plaintiff and Chirag entered into a business relationship in January 2012 - there is no mention of involvement by the Defendant in these agreements.

The Plaintiff further argues that, because the Defendant filed joint tax returns with Chirag, there was a partnership relationship. However, the Defendants' act of filing joint taxes together is an act typical of a married couple, and thus not indicate a partnership relationship. See Antonious, 358 B.R. at 185 (partnership must be implied while completely ignoring the parties' social relationship).

Additionally, the Plaintiff alleges that the Defendant knew or should have known of Chirag's scheme to defraud the Plaintiff, which could make her liable if she both knew of and aided the fraudulent acts. See Antonious, 358 B.R. at 185 (spouse can be liable for the fraud of the other spouse under § 523(a)(2)(A) if the "innocent" spouse knowingly aided and abetted that

8

fraud). The Plaintiff argues that since the Defendant was "an apparent signatory" on the Holding Companies' accounts (due to the two checks she had written) and a co-owner of the personal joint account, the Defendant was on "inquiry notice" as to the flow of misappropriated funds and thus should have known of the alleged fraud. Amended Complaint ¶ 38.

The Plaintiff argues inquiry notice existed because: (1) the Plaintiff entrusted her spouse with the funds that were to only be used for the operation of the business; (2) the funds had been deposited into the Holding Companies' accounts; (3) funds had been transferred from the Holding Companies' accounts to the joint account of the Defendant and Chirag; and (4) the Misappropriations were made without a proper business purpose. Id. ¶ 37. The Holding Companies' account statements were mailed to the home of the Defendant and Chirag, and the Defendant had access to the personal joint account to which the funds were transferred. Id. ¶¶ 14, 42. While these allegations make it possible that the Defendant knew of Chirag's scheme to defraud the Plaintiff, they do not make her knowledge plausible. The asserted facts do not suggest the Defendant knew the source of the funds, or that their use was "misappropriated." This merely raises a "sheer possibility that a defendant has acted unlawfully," and thus does not cross the line from making the Plaintiff's claims possible to plausible in order to defeat the Motion. See Iqbal, 556 U.S. at 678. Additionally, since both the Defendant and Chirag regularly wrote checks from their personal joint account, the Defendant's use of the account to write checks without more does not make the knowledge of the alleged fraud plausible. See Amended Complaint ¶ 7. Further, it is unreasonable to believe that the Defendant should have known of her husband's alleged fraud as the Defendant had no managerial title or responsibilities, or any ownership of the Holding Companies.

The facts provided create a picture of mere possibility of a partnership between the Defendant and her husband, or knowledge of her husband's alleged fraud. As discussed, for a

9

complaint to survive a Motion to Dismiss, the facts in the complaint must make the claim against the Defendant plausible on its face, not just possible. See Twombly, 550 U.S. at 570. Therefore, the Motion will be granted.

However, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, courts have held that "in the absence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment,' leave to amend should be freely given." Barros v. Young, 2010 WL 2640130, at *1 (M.D. Pa. 2010) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Here, the Plaintiff will be given a chance to further amend the complaint because doing so would not create undue delay, there has been no allegation of bad faith, there has not been repeated failures to cure deficiencies of the complaint, and there is no undue prejudice to the Defendant.

## CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiff has not made a plausible claim against the Defendant, thus the Motion will be granted, without prejudice, and the Plaintiff may file an amended complaint within twenty-one days.

Dated: August 14, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE